The opinion of the court was delivered by
Brewer, J.:
stfaoS!entof This is the fourth time that the controversy between these-parties in reference to the land in dispute has come to this-court. (21 Kas. 725; 22Kas. 216; 24Kas. 389.) A brief review of the facts in this controversy, as disclosed in these various cases, may not be inappropriate. ' It appears that on May 24, 1877, Conaway and wife executed a deed to a tract of land to Gore. *123 By a mutual mistake of all parties, the land was described in the deed so made as the southwest instead of the southeast quarter. At the time of this deed, Conaway and wife were occupying the southeast quarter, the land intended to be conveyed, as their homestead, and they continued to occupy the dwelling house thereon for nearly a year, though meantime Gore entered upon and cultivated a part, at least, of the land. After the discovery of the mistake, Mrs. Conaway alone executed a correct deed to Gore, but as the premises were occupied by Conaway and his wife as a homestead, such separate deed amounted to nothing. On March 17,1878, Gore brought his action to correct the mistake and reform the deed. In this action the Conaways answered, conceding the fact of the mutual mistake, but averring that Gore had failed to comply with the contract of purchase or to make the payments he had stipulated to make for the land. Upon the pleadings and over this answer the district court rendered judgment in favor of Gore, decreeing a reformation of the deed. The Conaways brought that ruling to this court and it was reversed, (21 Ivas., supra,) upon the doctrine that he who seeks equity must first do equity, and inasmuch as Gore had not as alleged complied with his contract, he was not in a position to claim a reformation of the deed. While this action was pending in the district court, and on April 18, 1878, Gore obtained possession, and immediately thereafter the Conaways commenced an action of forcible entry and detainer, which was tried before a justice of the peace and appealed to the district court. There a demurrer to plaintiffs’ evidence was sustained, on the ground that no sufficient notice to' quit had been given. The Conaways brought this ruling to this court, and it was reversed, (22 Kas., supra,) we holding that the notice served was sufficient. Thereafter the original action to reform the deed was tried upon its merits; the answer of the Conaways was found by the court to be untrue, and Gore obtained his decree for the reformation of the deed. The Conaways brought this ruling also to the supreme court, but the decision here was against them, and the judgment of the *124 district court was affirmed. (24 Kas., supra.) After the decision of that case in this court, the action of forcible entry and detainer came on for a second trial in the district court, and upon this trial Gore again obtained judgment; and to reverse this judgment this present proceeding in error has been brought.
These facts stand out plain from this statement: In 1877> Gore bought from plaintiffs in error the land upon which they resided, and paid in full all that he agreed to pay. By a mutual mistake the land was improperly described in the deed. Mrs. Conaway, upon discovery of the mistake, sought to correct it. Her husband refused to rectify the error, and from that time to this has been carrying on a litigation expensive and annoying in respect to the title and possession of the land, with the party who in good faith had bought and paid the full contract price. In fairness and good faith there never ought to have been any litigation. Conaway, on discovery of the mistake, should have acted honorably, as his wife sought to do, and executed a deed for the land which he had intended to convey. The litigation as to title has been closed. Gore’s title has been finally adjudged good. As to possession, the district court has' again decided in favor of Gore, and unless there is substantial error manifest in the proceedings, justice requires that this litigation as to possession should also stop, and the judgment of the district court be affirmed. Further, it may be remarked, that months before this last trial in the district court the Conaways fled the state, in the night-time, and at the time of the trial their whereabouts were unknown even to their attorneys.
i Forcible entry practice^no’; eno1' Passing now to the specific errors alleged, the first is, that the court erred in refusing to instruct the jury that they could find a verdict for one of the plaintiffs and against the ot^er5 or against one of the defendants and in favor of the other, as justice might require under the evidence and instructions. As an abstract proposition this is unquestionably good law, and doubtless under certain aspects of this case it was an instruction proper *125 to be given; and if the case stood before us upon simply the general verdict in favor of the defendants, we might be constrained to regard this objection as of some weight. But the jury found in their special findings specifically and separately in favor of each of the defendants, so that the jury could not have found the general verdict in favor of the defendants on the ground that the testimony did not show that both were guilty of a forcible entry or detention; and so far as any question as to the plaintiffs is concerned, the instructions of the court left no chance for misconception.
A second objection, or series of objections, runs to the refusal of the court to instruct that an equitable title could not be set up as a defense in this case. It is well to see upon this question exactly what instructions the court gave, and what it refused. It charged: “No question of title is involved in this suit. It makes no difference what are the rights of the parties to the premises. The only question for you to decide is, were the plaintiffs in peaceable possession of the premises, and did the defendants forcibly eject them and take possession without legal authority, and forcibly hold it against them ? And if this be true, and plaintiffs gave legal notice, then plaintiffs will be entitled, to recover, and you should find defendants guilty.” And again: “ When a person purchases a piece of land, the presumption is that he is entitled to receive the possession until the contrary is shown. The court instructs the jury that a party who purchases' land, and obtains title by virtue of. such purchase, is entitled to immediate possession, unless an agreement exists to the contrary; and that a party entitled to possession of lands and premises may legally obtain the same without notice, if done peaceably, and when once so in possession may retain the same even by force.” The instructions refused are the following:
“1. An equitable title cannot be set up as a defense before a justice of the peace in an action of forcible entry; and as this is an appeal from a justice of the, peace, this court cannot allow an. equitable title to be considered' as a defense. (Ohio Digest, vol. 1, p. 533.) •
*126 “2. This court has no equity jurisdiction in this case, and hence the matter must be considered as the paper title stood upon the bringing of this suit; and if you find that plaintiffs had at said time the legal title, that there had been a forcible entry or a forcible detainer of the said premises from the plaintiffs, that the plaintiffs had been in peaceable possession of the premises up to the time of entry by the defendants, and if you find that plaintiffs gave legal notice to defendants to leave, then plaintiffs are entitled to recover.
“ 3. If you find plaintiffs had the legal title to said premises up to April 16,1878, and were in peaceable possession of the same, and then that defendants entered said premises and ■ held the same by force, and the plaintiffs gave proper legal notice to defendants to quit, then plaintiffs are entitled to recover in this action.”
2. Title. We see no error in the court’s ruling in this matter. It is true, as the court charged the jury, that questions of title are not to be litigated in actions of this nature. The ° question is simply one of the unlawful and forcible disturbance or withholding of possession; and yet, as we shall see hereafter, evidences of title are often properly received in- evidence, and questions of title may often be considered and have an important bearing upon the final decision. Indeed, cases may arise under our statute where the plaintiff may rest his entire right of recovery upon mere proof of title. (Price v. Olds, 9 Kas. 66.)
' Counsel for plaintiffs in error would seem, from the instructions they asked, to hold that equitable titles can never be offered in evidence and never considered in actions of this kind, while legal titles may be. We do not understand that any such distinction exists in this state; in so far as title may ever be shown in actions of this kind, an equitable title is as competent as a legal. Every defense which a party may have to an action brought against him, whether such defense be legal or equitable, he may interpose in that action, and is not driven to another court or another form of action to asserts.uch defense. Of course this question may be important in this case, because it is not pretended that the defendants had legal title until long after their entry and possession. At *127 that time all the rights and title they had to the premises were equitable, and if those equitable rights may not be shown, if the existence of the naked legal title in the plaintiffs shuts out all question of the existence and extent of defendants’ equitable rights, then substantial justice may be sacrificed to mere forms. But as we have said, the law is not so. So far as evidence of title is competent and proof of title affects an action of this kind, evidence and proof of an equitable is as sufficient as of a legal title. This.in fact is •not an open question in this state. See the case of Alderman v. Boeken, 25 Kas. 658, in which an equitable title was held a sufficient defense in an action of forcible detainer brought under the last clause of §159 of the code of civil procedure before justices.
3 Evidence of tltleThe next errors complained of are, in the admission in evidence of the original deed from plaintiffs to Gore, the correct deed by Mrs. Conaway alone, and the final decree of the district court reforming said first-mentioned deed. The ruling of the district court was right on this question. Putting these instruments together, they showed conclusively that at the time of the entry the defendants had the full equitable title to the land, and prima facie the right of possession. While of course title absolute and complete may not justify a forcible and violent entry, (for the law does not allow a disturbance of the peace in order to acquire possession, and a party having such title and right of possession must resort to legal means to acquire that possession,) yet evidence of such title and right of .possession is competent in order to show the purpose with which the entry was made, and to uphold the possession if once peaceably obtained. See upon this point, Dennis v. Wood, 48 Cal. 361; Pierson v. Herr, 53 Ill. 144.
One other question is raised by counsel: it is insisted that the verdict is contrary to the evidence. In reference to this question, it may be remarked, as heretofore intimated, that the jury not only found a verdict of not guilty, but in answer to special questions they acquitted each defendant separately *128 of any forcible entry or detention. There can be no doubt, therefore, as to what the jury meant, or how they looked upon the transaction. It is a familiar rule in this court to sustain the conclusions of a jury upon any question of fact, if there -be any testimony which fairly supports them. It matters not how the facts as a whole impress us, if looking through the record we can see testimony which gives any reasonable support to the verdict. We confess to some hesitation upon this question, and that, taking all the testimony, the transaction does not impress us as it did the jury. It looks very like a forcible assertion of rights attempted to be withheld, and such an act the law does not approve. And yet it cannot be said that their conclusions were wholly destitute of support. Upon the record as it stands before us, we think substantial justice has been done, and that there is enough to justify us in sustaining the verdict. There is testimony showing that no notice had ever been served upon the defendant Gore, and as to him, therefore, the verdict in his favor was proper. He was manifestly entitled to possession, and it ought to have been given to him voluntarily and without hesitation.
The defendant Reed was not present at the time possession was taken by Gore, nor until the next day, when he entered into possession as tenant and representative of Gore. At that time, if we lay aside the manner of acquiring possession, Gore had the right of possession, as well as the title.
Again, Mrs. Conaway, who was the only person present and in actual possession, vacated and surrendered possession to the defendant Gore. Whatever wrong she may have committed against the rights or possession of her husband, the fact is, that, being the only person present and in actual possession, she voluntarily abandoned it, and turned the premises over to Gore.
Other minor matters might be mentioned, but without noticing them in detail, we repeat what we have once said, that, while we have some hesitation, we have concluded that there is enough to support the verdict of the jury. (Hoffman v. Harrington, 22 Mich. 52; People v. Fields, 1 Laus. 222; McDougall v.Sitcher, 1 Johns. 42; 2 Starkie on Ev. 330.)
*129 There being no other question in the ease, the judgment will be affirmed.
All the Justices concurring.